**Slip Op. No. 20-114**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| **STAR PIPE PRODUCTS,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | **Before: Timothy C. Stanceu, Chief Judge** |
| Defendant, | **Court No. 17-00236** |
| and | |
| **ANVIL INTERNATIONAL,** | |
| Defendant-Intervenor. | |

**OPINION AND ORDER**

[Remanding an agency decision issued in response to court order in litigation contesting a scope ruling interpreting an antidumping duty order on certain non-malleable cast iron pipe fittings from the People's Republic of China]

Dated:August 11, 2020

*Francis J. Sailer*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, D.C., for plaintiff.  With him on the brief were *Ned H. Marshak* and *Kavita Mohan*.

*Sarah Choi*, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *L. Misha Preheim*, Assistant Director.  Of counsel was *Kristen E. McCannon* and David W. Richardson, Attorneys, Office of the Chief Counsel For Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*J. Michael Taylor*, King & Spalding LLP, of Washington, D.C., for defendant-intervenor. With him on the brief was *Daniel L. Schneiderman*.

Stanceu, Chief Judge:  Before the court is a decision (the "Remand Redetermination") of

the International Trade Administration, U.S. Department of Commerce ("Commerce" or the

"Department") submitted in response to the court's previous Opinion and Order in litigation contesting a scope ruling. *Star Pipe Prods. v. United States*, 43 CIT __, 365 F. Supp. 3d 1277 (2019) ("*Star Pipe I*"); *Final Results of Redetermination Pursuant to Ct. Order* (June 27, 2019) (Rem. P.R. Doc. 39) ("*Remand Redetermination*").[1]  Concluding that Commerce has misinterpreted information in one of the sources of information its regulations require it to consider, the court orders reconsideration of the Remand Redetermination.

## I.  BACKGROUND

The court presumes familiarity with the background of this litigation, as set forth in the court's prior Opinion and Order, which is summarized and supplemented herein. *See Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1278–79.

### A. Proceedings Culminating in the Contested Determination

Commerce issued the contested decision ("Final Scope Ruling") on August 17, 2017. *See Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by Star Pipe Products* (Aug. 17, 2017) (P.R. Doc. 13) ("*Final Scope Ruling*").  In the Final Scope Ruling, the Department determined that goods Star Pipe Products ("Star Pipe") identified as "flanges" made of ductile iron are included within the scope of an antidumping duty order on non-malleable cast iron pipe fittings from China ("Order").  *Id.* at 1; *see Notice of Antidumping Duty Order: Non-Malleable Cast Iron Pipe Fittings From the People's Republic of China*, 68 Fed. Reg. 16,765 (Apr. 7, 2003) ("*Order*").

---

[1] All citations to documents from the administrative record are to public documents. References cited as "P.R. Doc.__" are to documents that were on the record in *Star Pipe Prods. v. United States*, 43 CIT __, 365 F. Supp. 3d 1277 (2019) ("*Star Pipe I*") while references cited as "Rem. P.R. Doc. __" are to documents placed on the agency record during Commerce's redetermination proceedings.

The Order resulted from an antidumping duty petition filed in 2002. *See Petition for Imposition of Antidumping Duties: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China* (Feb. 21, 2002) (Rem. P.R. Doc. Nos. 30–32, Ex. 1) ("*Petition*").

Commerce issued the Final Scope Ruling in response to a request for a scope ruling ("Scope Ruling Request") that Star Pipe submitted to Commerce in 2017. *Star Pipe Products Scope Request: Ductile Iron Flanges* (June 21, 2017) (P.R. Docs. 1–2) ("*Scope Ruling Request*"). The Scope Ruling Request stated that "[a] flange is an iron casting used to modify a straight end pipe to enable its connection either to a flanged pipe, a flanged pipe fitting or another flange attached to the otherwise straight end of another pipe, in order to connect pipes, valves, pumps and other equipment to form a piping system." *Id.* at 3 (footnote omitted). As described in the Scope Ruling Request, the flanges at issue are disc shaped and produced to be assembled to a ductile iron pipe. *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1280 (citing *Scope Ruling Request*, Ex. 1). The flanges are described as follows:

> In the thicker center portion (the 'hub') of each flange is a large hole with tapered thread to facilitate attachment of the flange to the end of a threaded pipe. The outer, thinner portion of each flange is drilled with eight holes (either tapped or untapped), arranged in a circle, for insertion of fasteners. A photograph in the Scope Ruling Request illustrates how two pipes to which flanges have been assembled can be joined at the ends using bolts and nuts through the eight holes, with a gasket fitted between the two flanges to seal the joint.

*Id.* (citing *Scope Ruling Request*) (citations omitted).

## B. Proceedings Before the Court of International Trade

Plaintiff Star Pipe Products commenced this action on September 15, 2017. Summons, ECF No. 1; Compl., ECF No. 4. On May 10, 2018, Star Pipe moved for judgment on the agency record. Pl.'s Mot. for J. on the Agency R. under Rule 56.2, ECF No. 29. Defendant United States responded in opposition on August 24, 2018. Def.'s Resp. in Opp'n to Pl.'s Mot. for J. on

the Agency R., ECF No. 37.  Defendant-intervenor Anvil International LLC ("Anvil") responded in opposition on September 7, 2018.  Def.-Inter.'s Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 38.  Star Pipe replied on September 25, 2018.  Pl.'s Reply, ECF No. 41.

Following the court's decision in *Star Pipe I* remanding the Final Scope Ruling to Commerce for reconsideration, Commerce placed "new factual information" ("NFI") on the record on May 9, 2019 and provided interested parties an opportunity to comment and submit additional information.  *See Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Star Pipe Prod[u]cts Scope Remand Redetermination* (May 9, 2019) (Rem. P.R. Doc. 25) ("*Department's NFI*").  The information includes excerpts from the Petition.  *See id.* at Attach. 1.  On May 20, 2019, Star Pipe and Anvil commented on the new information and placed other new factual information on the record.  *See Star Pipe's New Factual Information in the Scope Inquiry on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China* (May 20, 2019) (Rem. P.R. Doc. Nos. 30–32) ("*Star Pipe's NFI*"); *Non-Malleable Cast Iron Pipe Fittings From The People's Republic of China/Submission Of Factual Information* (May 20, 2019) (Rem. P.R. Doc. No. 33).  Star Pipe's new factual information includes, *inter alia*, all pages of and exhibits to the Petition.  *See Star Pipe's NFI,* Ex. 1.

In response to *Star Pipe I*, Commerce submitted the Remand Redetermination on June 27, 2019, again determining that Star Pipe's ductile iron flanges were within the scope of the Order.  *Remand Redetermination* 3–14.  Star Pipe and Anvil filed comments on the Remand Redetermination.  *See* Star Pipe Prods.' Comments on Final Remand Redetermination (Aug. 23, 2019), ECF No. 62 (conf.) & ECF No. 63 (public) ("Star Pipe's Comments"); Def.-Inter.'s Comments on Commerce's Final Redetermination (Aug. 23, 2019), ECF No. 61, *incorporating*

[*Anvil's*] *Comments On Draft Results Of Redetermination* (May 29, 2019) (Rem. P.R. Doc. 38).

On October 1, 2019, defendant responded to the comments. *See* Def.'s Resp. to Comments on

Remand Results, ECF No. 66. On December 3, 2019, Star Pipe filed a Notice of Supplemental

Authority, *see* ECF No. 69, to which defendant responded on January 13, 2020. *See* Def.'s Resp.

to Pl.'s Notice of Suppl. Authority, ECF No. 72.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Pursuant to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), the

court exercises subject matter jurisdiction of a civil action arising under section

516A(a)(2)(B)(vi) of the Tariff Act of 1930, 19 U.S.C. § 1516a(a)(2)(B)(vi).[2] The court will

uphold the Department's determinations, findings, and conclusions in the scope ruling unless

they are "unsupported by substantial evidence on the record, or otherwise not in accordance with

law." 19 U.S.C. § 1516a(b)(1)(B)(i).

### B. The Court's Directive in *Star Pipe I*

*Star Pipe I* held that Commerce, in issuing the Final Scope Ruling, failed to comply with

its own regulation, 19 C.F.R. § 351.225(k)(1), which specifies factors Commerce is required to

consider when deciding whether merchandise is within the scope of an antidumping or

countervailing duty order.[3] *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1286. The court held

---

[2] All statutory citations herein are to the 2012 edition of the United States Code and all regulatory citations herein are to the 2017 edition of the Code of Federal Regulations.

[3] The regulation provides that Commerce "will take into account the following: … [t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary [of Commerce] (including prior scope determinations) and the [U.S. International Trade] Commission." 19 C.F.R. § 351.225(k)(1).

that the Final Scope Ruling did not give "thorough and fair consideration" to "'[t]he descriptions

of the merchandise contained in the petition … and the determinations of the … [U.S.

International Trade] Commission,'" in deciding that the ductile iron flanges were within the

scope of the Order.  *Id*. (quoting 19 C.F.R. § 351.225(k)(1)).  The court concluded that

Commerce "did not consider the petition, and its analysis of the [U.S. International Trade

Commission's] Report was so selective and cursory as to ignore a substantial amount of

information relevant to the scope question presented in this case."  *Id*.; *see* Non-Malleable Pipe

Fittings From China, Inv. No. 731-TA-990 (Final), USITC Pub. No. 3586 (Mar. 2003) ("*ITC

Report*").  The court directed Commerce to reconsider the Final Scope Ruling and submit a

redetermination after placing the antidumping duty petition or the relevant portions thereof on

the record.  *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1282–83.

### C. The Department's Remand Redetermination

In the Remand Redetermination, Commerce began its analysis with the scope language of

the Order.  *Remand Redetermination* 4.  Commerce addressed the first two paragraphs of the

scope language, the first of which is directed only to nonmalleable (gray iron) products and the

second of which adds to the scope certain products made instead of ductile iron.[4]  *Id*.  Commerce

---

[4] The first two paragraphs of the scope language in the Order are as follows:

> The products covered by this order are finished and unfinished non-
> malleable cast iron pipe fittings with an inside diameter ranging from 1/4 inch to
> 6 inches, whether threaded or unthreaded, regardless of industry or proprietary
> specifications.  The subject fittings include elbows, ells, tees, crosses, and
> reducers as well as flanged fittings.  These pipe fittings are also known as "cast
> iron pipe fittings" or "gray iron pipe fittings."  These cast iron pipe fittings are
> normally produced to ASTM A-126 and ASME B.16.4 specifications and are
> threaded to ASME B1.20.1 specifications.  Most building codes require that these
> products are Underwriters Laboratories (UL) certified.  The scope does not
> include cast iron soil pipe fittings or grooved fittings or grooved couplings.

(continued . . .)

identified a two-part inquiry, first considering whether the ductile iron flanges are described by the first sentence of the second paragraph of the scope language. *Id.* In pertinent part, that sentence reads: "[f]ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above . . ., threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope of the petition." *Order*, 68 Fed. Reg. at 16,765. Second, Commerce considered "whether Star Pipe's flanges are 'fittings' within the meaning of the scope." *Remand Redetermination* 4.

Commerce concluded that ductile iron flanges at issue are described by the first sentence in the second paragraph, reasoning that Star Pipe's flanges, being threaded and produced to be fitted to pipes with outside diameters between 2.5 and 4.8 inches, conform to the two pertinent physical characteristics, the "threaded or unthreaded" requirement and the inside diameter specification of ¼ inch to 6 inches. *Id*. at 4–5. The Remand Redetermination proceeds to examine sources of information identified in 19 C.F.R. § 351.225(k)(1), addressing the Petition,

---

(. . . continued)

Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope of this petition. These ductile fittings do not include grooved fittings or grooved couplings. Ductile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153 are not included.

*Notice of Antidumping Duty Order: Non-Malleable Cast Iron Pipe Fittings From the People's Republic of China*, 68 Fed. Reg. 16,765, 16,765 (Apr. 7, 2003) (the "*Order*").

the ITC Report, and its past scope rulings. *Id*. at 5–14. Commerce concluded that all three of these sources support a determination that Star Pipe's flanges are subject to the Order. *Id*.

Addressing the Petition, the Remand Redetermination relies upon brochures of Anvil and Ward Manufacturing, Inc. ("Ward") that were attached as Exhibit 2 to the Petition, concluding that this evidence "indicates that the petitioners intended to cover flanges in the scope of the *Order*." *Id.* at 5.[5] As to the ITC Report, the Remand Redetermination concludes that Star Pipe's flanges, as described in the Scope Ruling Request, meet the definition of "pipe fitting" included in the ITC Report, *id.* at 7, and that the report "specifically references certain types of flanges as being included within its definition of a pipe fitting," *id.* at 8. On the third source of information, Commerce concluded that its current ruling on scope is supported by certain of its prior scope rulings. *Id.* at 13–14.

### D. The Petition Contains Evidence Supporting a Finding that Petitioners Considered Flanges to Be "Pipe Fittings"

The Anvil brochure is titled "Pipe Fittings." *Petition*, Ex. 2. On page PF-71, the brochure depicts a "flange union gasket type" appearing to be similar to the flanges under consideration. It also includes (on a page with no number showing in the exhibit) a "floor flange" that also resembles one of Star Pipe's flanges. *Petition*, Ex. 2. As Commerce found, this

---

[5] In its analysis of the meaning of the term "pipe fitting" as used in the Petition (Rem. P.R. Doc. 30–32, Ex. 1), (the "Petition"), Commerce also relied on a publication of U.S. Customs and Border Protection, "What Every Member of the Trade Community Should Know About: Classification and Marking of Pipe Fittings under Heading 7307," that it placed on the record for the Remand Redetermination. *Final Results of Redetermination Pursuant to Ct. Order* 5–6 (June 27, 2019) (Rem. P.R. Doc. 39) *("Remand Redetermination")*. That publication quotes EN 73.07 of the Explanatory Notes to the Harmonized Commodity Description and Coding System, which lists "flanges" among other exemplars of articles within the scope of international heading 7307 ("Tube or pipe fittings (for example, couplings, elbows, sleeves), of iron or steel"). *Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Star Pipe Prod[u]cts Scope Remand Redetermination*, Attach. II at 7 (May 9, 2019) (Rem. P.R. Doc. 25).

evidence supports the Department's conclusion that petitioner Anvil considered flanges similar to Star Pipe's to be "pipe fittings." *Remand Redetermination* 21–22.

The Ward brochure, also titled "Pipe Fittings," *id*., also supports a finding that the petitioners considered products identified as "flanges" to be pipe fittings, although it is less probative than the Anvil brochure because the pages of the Ward brochure illustrating these "flanges" are not attached to the Petition. *Petition*, Ex. 2. According to a page labeled "Table of Contents," the Ward brochure displays the following products: "Standard Malleable Fittings" (Section 1), "Extra Heavy Malleable Fittings" (Section 2), "Quality Pipe Unions" (Section 3), "Plugs & Bushings" (Section 4), "Top Beam Clamps and 'C' clamps" (Section 5), "Standard Cast Iron Pipe Fittings" (Section 6), "Flanges, Flange Unions, Companion Flanges, Flanged Fittings" (Section 7), and "Cast Iron Drainage Fittings" (Section 8). Of the eight sections, petitioners attached to the Petition only pages 30-39 of the brochure, which comprise Section 6 and describe and illustrate "Standard Cast Iron Pipe Fittings." No pages of any other section of the brochure were attached. Section 6 illustrates, and provides dimensions for, the following cast iron products: 90° straight ells (Figure 21), 90° reducing ells (Figure 22), 45° ells (Figure 23), straight tees (Figure 24), reducing tees (Figure 25), reducing couplings (Figure 29), pipe caps (Figure 30), and crosses (Figure 30A). Absent from the exhibit is Section 7 of the brochure, which includes "flanges." *Id*. Without the pages from Section 7, the included portion of the brochure is insufficient to support a finding that the characteristics of Ward's "flanges" necessarily are those described in Star Pipe's Scope Ruling Request. Nevertheless, the title of the brochure and the title of Section 7, considered together, are evidence supporting findings that: (1) Ward considered "flanges" (however described) to be a product separate from flanged fittings, and (2) Ward considered both to be "pipe fittings."

Star Pipe argues that the failure to attach Section 7 of the Ward brochure to the Petition and the fact that the body of the Petition mentions flanged fittings as an exemplar but makes no reference to flanges in the narrative is evidence that the petitioners intended that flanges would be outside the scope of the investigation they were proposing. Star Pipe's Comments 6–8. The court agrees that the absence of any mention of flanges in the body of the Petition detracts from an inference that petitioners intended for flanges to be subject to the investigation. The description in the Petition of the proposed scope of the investigation includes this sentence: "[t]he subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged fittings." *Id.* at 2 (quoting *Order*, 68 Fed. Reg. at 16,765). There is no specific mention of "flanges" among the exemplars or anywhere within Section E of the Petition (*Petition* at "Scope of Commerce Department Investigation of Subject Merchandise (19 C.F.R. § 351.202(b)(5)"). *Petition* at 3. In support of plaintiff's argument, it can be argued that the specific inclusion among the exemplars of "flanged fittings" (a product with some physical characteristics and uses similar to those of flanges but which, as discussed later in this Opinion and Order, Commerce does not consider flanges to be) supports an inference that the petition would have mentioned flanges specifically at this point in the text had petitioners intended to include them in the proposed scope. But at best, this is an inference. By itself, the absence of a reference to flanges in the body of the Petition does not establish that the petitioners intended that flanges would *not* be among the products subject to the investigation they were proposing.

Star Pipe argues, further, that Anvil's brochure lists merchandise that was proposed to be outside the scope of the investigation. Star Pipe's Comments 8. Both brochures are evidence that the petitioners considered "flanges" to be pipe fittings, and nothing in the Petition expressly excludes flanges from the proposed scope of the investigation.

On remand, to satisfy the requirements of 19 C.F.R. § 351.225(k)(1), Commerce must review the relevant evidence contained in the Petition (as well as the other sources) and fully and fairly consider that evidence in light of the record as a whole.

### E. The Remand Redetermination Erroneously Relies on the ITC Report to Support Its Conclusion that Star Pipe's Flanges Are Within the Scope of the Order

In *Star Pipe I*, the court addressed the Department's reliance on the ITC report, concluding that "[r]ead in the entirety, the ITC Report contains evidence lending weight to a conclusion that Star Pipe's flanges are not subject merchandise. Under 19 C.F.R. § 351.225(k)(1), Commerce was not free to ignore this evidence." *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1286. In the Remand Redetermination, Commerce again concludes that its decision on Star Pipe's flanges is supported by evidence in the ITC report. *Remand Redetermination* 7. This conclusion remains erroneous.

The ITC report does not support the Department's decision as to scope and, as the court concluded in *Star Pipe I*, instead contains some evidence detracting from it. As the court mentioned, the ITC Report did not discuss "flanges" as products within the scope of the investigation and considered all ductile flanged *fittings* to be outside the scope of the investigation (and outside the scope of the domestic like product), all of which casts doubt on a premise that the ITC considered ductile iron *flanges* to be within that scope. *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1286.

The court noted, additionally, that the ITC contemplated that the subject imports are those used in pipe fitting applications, whereas Star Pipe's products are intended for use, and are used, in pipe fabrication applications (i.e., the assembling of a flange to a straight pipe). *Id.* at __, 365 F. Supp. 3d at 1283.

**1. The Remand Redetermination Erred in Concluding that Star Pipe's Flanges Conform to a Description in the ITC Report**

Commerce concluded in the Remand Redetermination that Star Pipe's ductile iron flanges conformed to the term "pipe fittings" as used in the scope language of the Order. *Remand Redetermination* 5. Commerce recognized that neither the scope language of the Order nor the Petition defined the term, *id.* at 7, but relied on a statement in the ITC report that, according to Commerce, "defines a pipe fitting as an iron casting 'generally used to connect the bores of two or more tubes, connect a pipe to another apparatus, change the direction of fluid flow, or close a pipe.'" *Id.* (quoting *ITC Report* at 4). Commerce concluded that Star Pipe's flanges conformed to this description based on Star Pipe's own description of a flange in the Scope Ruling Request: "Star Pipe claimed in its *Scope Ruling Request* that a flange is 'an iron casting used to modify a straight end pipe to enable its connection either to a flanged pipe, a flanged pipe fitting or another flange attached to the otherwise straight end of another pipe, in order to connect pipes, valves, pumps and other equipment to form a piping system.'" *Id.* (quoting *Scope Ruling Request* 3).

The Department's reasoning disregards the uncontradicted record evidence that a flange does not satisfy the ITC's description in the form in which it is imported, i.e., before it becomes part of an assembly with a straight end pipe. As the court discussed in *Star Pipe I*, Star Pipe's descriptive statement in the Scope Ruling Request, consistent with all other record evidence, supports a finding that Star Pipe's flanges are produced for and suitable for only one purpose: attachment to a straight end pipe, after importation, to form such an assembly. *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1283. The Department's reliance on Star Pipe's statement in

the Scope Ruling Request only confirms this point.[6]  Commerce itself states in the Remand

Redetermination that "[t]he purpose of Star Pipe's flanges is to modify pipes in such a way as to

enable their connection to other pipes or other objects within a piping system."  *Remand*

*Redetermination* 23.  As the court concluded in *Star Pipe I*, "[s]ubstantial evidence is not

available on the administrative record to support a finding that Star Pipe's flanges, in the form in

which they are imported, are suitable for, or approved for, joining the bores of two pipes or

joining a pipe to another apparatus."  *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1284.

Furthermore:

> Seen in light of the record evidence on the whole, the Department's finding
> appears to describe the use of the flange only after the flange has become a
> component in the downstream product resulting from post-importation
> processing, i.e., a pipe to which a fabricator has added one or more flanges.  That
> product, however, is not the subject of the Scope Ruling Request and is not within
> the scope of the Order (which applies only to pipe fittings, not pipes or assemblies
> containing pipes).

*Id.*, 43 CIT at __, 365 F. Supp. 3d at 1284.  In its imported form, i.e., prior to becoming part of

an assembly, a Star Pipe flange cannot be used "to connect the bores of two or more pipes or

tubes, connect a pipe to another apparatus, change the direction of fluid flow, or close a pipe,"

*id.*, 43 CIT at __, 365 F. Supp. 3d at 1281 (quoting *ITC Report* at 4), as, for example, can

"elbows, ells, tees, crosses, and reducers as well as flanged fittings," *id.*, 43 CIT at __, 365

F. Supp. 3d at 1280–81 (quoting *Order*, 68 Fed. Reg. at 16,765).  Star Pipe's flanges differ in

this respect from each of the exemplars in the scope language.  The Remand Redetermination

---

[6] *Star Pipe I* also directed Commerce to record evidence pertaining to the AWWA C115 industry standard to which the flanges are described as conforming.  Under that standard, flanges are approved for attachment to straight end pipes only at the point of fabrication, not in the field, by means of processing that involves more than simple assembly.  *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1283–84.

does not attempt to resolve this issue, which the court fully raised in *Star Pipe I*.[7]  Instead,

Commerce continues to rely on a strained interpretation of the description of pipe fittings in the

ITC Report.  *See Remand Redetermination* 23.  Read on the whole, the ITC Report does not

provide evidence that the ITC meant for this description to describe flanges such as Star Pipe's

flanges.

### 2. The Remand Redetermination Misinterpreted the ITC Report by Confusing Star Pipe's Flanges with "Flanged Fittings"

In *Star Pipe I*, the court opined that "[t]he absence of any mention of ductile iron flanges,

as opposed to ductile flanged fittings, in the ITC Report (and, according to plaintiff, in the

petition) casts doubt on the premise that ductile iron flanges were contemplated as part of either

the scope of the investigation or the scope of the domestic like product."  *Star Pipe I*, 43 CIT at

__, 365 F. Supp. 3d at 1286.  The Remand Redetermination asserts, to the contrary, that "the ITC

report also specifically references certain types of flanges as being included within its definition

of a pipe fitting."  *Remand Redetermination* 8.  The document continues, "[a] footnote on page

I-6 of the ITC Investigation Final states that '{a}nother use for these {subject} non-malleable

flanged fittings is as so-called floor flanges to affix pipes as hand (or other) railings to floors or

other surfaces.'"  *Id.* (quoting *ITC Report* at I-6).  From this footnote, Commerce concluded in

the Remand Redetermination that "[c]learly, the ITC considered at least one type of flange to be

a type of pipe fitting."  *Id.*  In positing that the ITC considered a type of flange to be a type of

flanged fitting, the Department's analysis of the ITC Report again fell into error.

---

[7] Instead, the Remand Redetermination asserts that there is no record evidence that the attachment of flanges to straight end pipes at the point of fabrication could not be performed by "pipe fitters."  *Remand Redetermination* 8–11.  This tangential point fails to address the issue the court raised and, moreover, impermissibly attempts to support a finding or inference from the *absence* of record evidence.

The quoted footnote is addressed to certain "non-malleable flanged fittings," the use of which "is as so-called floor flanges." *ITC Report* at I-6 n.28.  But the reference unmistakably is to a "use" of a type of flanged fitting, a product that is distinct from a "flange" of the type at issue in this case.  As Commerce itself stated later in the Remand Redetermination, "Star Pipe and Commerce both agree that Star Pipe's flanges are not the same as flanged fittings."  *Remand Redetermination* at 13.  Nor can the ITC Report be interpreted to regard as "flanged fittings" the flanges on which Star Pipe sought a ruling.  As the court observed in *Star Pipe I*, "Star Pipe's flanges do not conform to the description of 'flanged fittings' in the ITC Report because they are not 'cast with an integral rim, or flange, at the end of the fitting.'"  *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1285 (quoting *ITC Report* at I-9).  The cited footnote in the ITC Report does not support a decision to place Star Pipe's flanges within the scope of the Order.[8]

### F. The Remand Redetermination Correctly Concludes that Commerce Placed Flanges Within the Scope of the Order in a Past Scope Ruling

The Remand Redetermination relies upon three prior scope rulings by Commerce: the "UV Ruling," "Napac Ruling," and "Taco Ruling."[9]  *Remand Redetermination* 13–14.  In *Star Pipe I*, the court noted that neither the Taco Ruling nor the Napac Ruling supported a

---

[8] Another footnote in the ITC Report also mentions "use as floor flanges" in reference to non-malleable pipe fittings.  Non-Malleable Pipe Fittings from China, Inv. No. 731-TA-990 (Final), USITC Pub. No. 3586 at 5 n.12 (Mar. 2003) (citation omitted)

[9] *See Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by U.V. International LLC* (May 12, 2017) ("*UV Ruling*"); *see also Final Scope Ruling on the Antidumping Duty Order on Finished and Unfinished Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by Napac for Flanged Fittings* (Sept. 19, 2016) ("*Napac Ruling*"); *Final Scope Ruling on the Black Cast Iron Flange, Green Ductile Flange, and the Twin Tee* (Sept. 19, 2008) ("*Taco Ruling*"), *appended to the Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by Star Pipe Products* (Aug. 17, 2017) (P.R. Doc. 13) as Attach. 1, 2, and 4, respectively.

determination that Star Pipe's flanges are pipe fittings within the meaning of the Order. *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1285 n.8.

As *Star Pipe I* stated, in the Taco Ruling, "Commerce found that the black and green flanges at issue in that proceeding were 'flanged fittings'; Commerce reached this finding 'because they are fittings that are cast with an integral rim, or flange, at the end of the fitting.'" *Id.* (quoting *Taco Ruling* 9). The Remand Redetermination states that "[w]e continue to rely on the *Taco Ruling* for the proposition that Commerce has previously found some types of flanges to be included in the scope, even though they were different than Star Pipe's flanges." *Remand Redetermination* 14. This reasoning is unpersuasive in considering flanged fittings to be "types of flanges," ignoring the distinction made elsewhere in the Remand Redetermination, *see, e.g., Remand Redetermination* 12–13.

*Star Pipe I* stated that "[s]ome of the articles at issue in the Napac Ruling were described as gray iron flanged fittings, *Napac Ruling* 3, and the court is unable to conclude from the descriptions therein that the remaining articles were identical to Star Pipe's flanges." *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1285 n.8. The Remand Redetermination does not question the court's inability to conclude that the Napac Ruling covered the same product as that at issue in this case. Instead, Remand Redetermination states that "we continue to rely on the *Napac Ruling* for the proposition that Commerce has previously found that ductile iron fittings are covered by the scope of the *Order*, unless they meet AWWA C110 or AWWA C153." *Remand Redetermination* 14. This proposition does not address the question of whether Star Pipe's flanges are "pipe fittings" within the intended meaning of that term as used in the scope language of the Order. Moreover, the underlying premise of the Department's statement is misguided. Not all ductile iron pipe fittings are within the scope of the Order, regardless of whether they

meet one of those two standards. As is relevant here, ductile iron pipe fittings are within the

scope of the Orders only if they are "[f]ittings that are made out of ductile iron that have the

same physical characteristics as the gray or cast iron fittings subject to the scope above." *Order*,

68 Fed. Reg. at 16,765. Also, the Order contains an exclusion for certain ductile iron products—

grooved fittings and couplings—in addition to the exclusion for those that meet the AWWA

C110 or the AWWA C153 standard. *Id*.

The Remand Redetermination relies on the UV Ruling "for the proposition that

Commerce has previously found that some ductile iron flanges similar to Star Pipe's flanges

were included with the scope of the *Order*." *Remand Redetermination* 14 (footnote omitted). In

contrast to the other two rulings, the UV Ruling appears to be on point and in that respect, when

considered according to 19 C.F.R. § 351.225(k)(1), provides support for a determination placing

Star Pipe's flanges within the scope of the Order. This is not to suggest that the support it lends

is unqualified; to the contrary, the support it provides is limited by the errors in that ruling. The

UV ruling states as follows:

> In reviewing the product documentation submitted by U.V. International, the
> Department finds that U.V. International's flanges conform to the ITC's definition
> of pipe fittings. Specifically, as demonstrated in U.V. International's original
> submission, its flanges can be threaded onto the ends of two pipes, and then those
> flanges can be bolted together so as to connect the pipes. Alternatively, a flange
> may be threaded onto one pipe and then used to connect that pipe to an apparatus
> with a compatible connector. Moreover, the Department has found that flanges
> are fittings in both the Taco and Napac scope rulings.

*UV Ruling* 3. This is the same reliance on the description of "pipe fittings" in the ITC Report

that the court finds to be misplaced in this case. Again, the problem is that the flanges in

question do not satisfy the ITC's description in the form in which they are imported, and the

strained interpretation of the ITC's description casts doubt on a conclusion that the ITC

considered flanges to be within the scope of the investigation, particularly when viewed in light

of other evidence in the ITC Report. Also, the statement that Commerce has found that "flanges" are fittings in the Taco and Napac rulings is unavailing, as there is no indication that either of those rulings addressed flanges of the type at issue in this case.

### G. Star Pipe's Notice of Supplemental Authority

Throughout this proceeding, Star Pipe has argued that the exclusion for "[d]uctile cast iron fittings with … flanged ends and produced to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153," *Order*, 68 Fed. Reg. at 16,765, is a basis upon which its flanges, even if presumed to be "pipe fittings," must be excluded from the scope of the Order. Star Pipe maintains that its flanges conform to AWWA C115 and argues that "Star Pipe has provided substantial record evidence that AWWA C115 is a complementary standard to AWWA C110 and C153; the only difference is that C115 covers flanges while C110 and C153 are for flanged fittings." Star Pipe's Comments 5 (citing *Scope Ruling Request* 3 & Ex. 3). In the Final Scope Ruling, Commerce rejected Star Pipe's argument, reasoning that "Star Pipe has not provided documentation from AWWA that describes C115 as the companion specification to C110 or C153. Just because AWWA shares all the relevant product characteristics of C110 and C153 does not make it a companion specification." *Final Scope Ruling* 11. The Final Scope Ruling added that even had Star Pipe shown that AWWA C115 is the companion specification to AWWA C110 and C153, "such a showing would be irrelevant because the *Order* only excludes specifications AWWA C110 and AWWA C153, and makes no mention of any companion specifications" and that "if the petitioner had intended to exclude AWWA C115 from the scope of the *Order*, it would have done so." *Id.* at 11–12.

The Remand Redetermination reiterates the Department's earlier position that it is irrelevant whether AWWA C115 is a companion specification to AWWA C110 and C153

because only products meeting the named specifications, and not those meeting companion specifications, are the subject of the scope exclusion. *Remand Redetermination* 19. The Remand Redetermination did not reiterate, and therefore did not maintain, the Department's rationale in the Final Scope Ruling that Star Pipe had failed to demonstrate that AWWA C115 is a companion specification to AWWA C110 and C153.[10]

In its December 3, 2019 Notice of Supplemental Authority, Star Pipe directs the court's attention to a scope ruling (the "ProPulse Ruling") on certain steel hose fittings, which Commerce issued during the course of this litigation, after briefing was completed. *See* Notice of Suppl. Authority, Ex. 1; *Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Forged Steel Fittings: Request by ProPulse, A Scheiffer Company* (Oct. 15, 2019) ("*ProPulse Ruling*"). Drawing an analogy to this case, Star Pipe argues that "[i]n the ProPulse Scope Ruling, Commerce found that ProPulse's fittings manufactured to ISO 12151-2 and ISO 12151-6 were excluded from the scope of the Order on Forged Steel Fittings from the People's Republic of China because 'the two ISO hose fitting standards are essentially equivalent to SAEJ516, which is expressly excluded from the Orders.'" *Notice of Suppl. Authority* 1 (quoting *ProPulse Ruling* 5).

Defendant responds to Star Pipe's argument by asserting that [t]here are no … relevant identical or similar terms . . .  that would affect any of the analysis in this case" and that the hose fittings at issue, in the words of the ProPulse Ruling, "differ from the subject merchandise, which

---

[10] Although the word "companion" is not used in the excerpts, there is record evidence of the relationship between the standards. For example, AWWA C115 provides that "[f]langes shall conform to the respective chemical and physical properties for gray-iron and ductile-iron fittings, according to ANSI/AWWA C110/A21.10." *Star Pipe Products Scope Request: Ductile Iron Flanges*, Ex. 3 at 7, 4.3.3 (June 21, 2017) (P.R. Docs. 1–2). The submission also includes record evidence that AWWA C110 applies to flanged fittings, 3 inches to 48 inches, AWWA C153 applies to larger flanged fittings, and C115 applies to flanges. *Id.*, Ex. 3 at ix.

is primarily used to distribute high pressure or corrosive liquids in the end markets of oil and gas, natural gas, chemical plants, petrochemical plants, and power plants." *Def.'s Resp. to Pl.'s Notice of Suppl. Authority* 2 (quoting *ProPulse Ruling* 4–6) (emphasis omitted).

Defendant's Response to the Notice of Supplemental Authority fails to draw a meaningful distinction between the reasoning in the ProPulse Ruling and that of the Remand Redetermination. The ProPulse Ruling specifically relied upon the Department's conclusion that the standards involved "are essentially equivalent." *ProPulse Ruling* 5 ("Specifically, the two ISO hose fitting standards are essentially equivalent to SAE J516, which is expressly excluded from the *Orders*"). Defendant's purported distinction regarding the treatment of use in the two proceedings is also unconvincing because in this case Star Pipe also draws a distinction as to use, pointing out that the general use of its flanges is for water supply and wastewater applications while the subject merchandise is used almost exclusively in fire prevention/sprinkler and steam conveyance systems. *See Petition* 4 ("Virtually all subject fittings are used in fire protection systems and in the steam heat conveyance systems used in old inner cities."); *Scope Ruling Request* 10 ("In contrast, the flanges subject [to] this request are for the water and wastewater industries and are not generally used in fire protection systems or steam heat conveyance systems."). In the redetermination it submits in response to this Opinion and Order, Commerce may take the opportunity to address the issue plaintiff raises in its Notice of Supplemental Authority.

### III. CONCLUSION AND ORDER

In summary, the Remand Redetermination, unlike the Final Scope Ruling, considered all three sources of information that its regulation, 19 C.F.R § 351.225(k)(1), required it to consider. The court concludes that Commerce committed errors in analyzing the evidence in one of those

sources, the ITC Report.  The Remand Redetermination permissibly found certain evidentiary

support for its determination in the other two sources of information, the Petition and one of its

own past scope rulings, the UV Ruling.

On remand, Commerce must issue a new decision that is consistent with this Opinion and

Order.  In particular, the new decision must recognize that the ITC Report does not contain

evidence supporting a conclusion that Star Pipe's flanges are within the scope of the Order and

contains some evidence that detracts from such a conclusion.  At this point in the litigation, the

court declines to decide the question of whether or not the record evidence Commerce found in

the Petition and the UV Ruling is sufficient to support such a conclusion in light of all record

evidence, including the record evidence detracting from such a conclusion.  Upon correcting the

errors the court identifies, Commerce must make that determination in the first instance.

Therefore, upon consideration of the Remand Redetermination and all papers and

proceedings had herein, it is hereby

**ORDERED** that Commerce, within 90 days of the issuance of this Opinion and Order,
shall submit a second decision upon remand ("Second Remand Redetermination") that is
consistent with this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenor shall have 30 days from the filing of
the Second Remand Redetermination in which to submit comments to the court; and it is further

**ORDERED** that defendant shall have 15 days from the date of filing of the last comment
on which to submit a response to the comments that have been submitted.

        /s/ Timothy C. Stanceu
        Timothy C. Stanceu
        Chief Judge

Dated:   August 11, 2020
       New York, New York